UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR JORDAN | CIVIL ACTION NO. |
| PLAINTIFF | 18-cv-8528 (JGK) |
| V. | AMENDED COMPLAINT |
| BOARD OF ELECTIONS IN THE CITY OF NEW YORK<br>JOSE MIGUEL ARAUJO, JOHN FLATEAU,<br>    MARIA R. GUASTELLA, MICHAEL MICHEL,<br>    ALAN SCHULKIN, SIMON SCHAMOUN,<br>    ROBERT SIANO, and FREDERIC M. UMANE,<br>    Commissioners, New York City Board of Elections,<br>SALVATORE BARRERA<br>JOSUE PIERRE,<br>RODNEYSE BICHOTTE<br>CHIDI EZE<br>GARY TILZER<br>KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE<br>EXECUTIVE COMMITTEE OF THE KINGS COUNTY<br>    DEMOCRATIC COUNTY COMMITTEE<br>DEMETRIA JULIEN<br>MICHAEL DAVIDSON<br>SHIRLEY CHISHOLM DEMOCRATIC CLUB<br>CLARENCE ROBERTSON<br>MABLE ROBERTSON<br>EMMANUEL VAMBRAN<br>LISA L. DERRICK | |
| DEFENDANTS | JURY TRIAL DEMANDED |

## I. NATURE OF THE ACTION

1. This is an action brought against defendants, who while acting under color of law, engaged in a pattern and practice to conspire, cooperate scheme, engage in racketeering activity, violate, and willfully subject the Plaintiff to the deprivation of rights secured to the Plaintiff pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendment to the United States constitution.

## II. JURISDICTION

2. This court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341 & 1343 because it is filed to obtain compensatory damages, punitive damages, and

1

injunctive relief for the deprivation under color of state law, of the rights of citizens of the United States secured by the United States Constitution and federal law pursuant to 42 U.S.C. § 1983. The Court has supplemental jurisdiction over claims relating to a violation of state law under the provisions of 28 U.S.C. § 1367.

### III.  VENUE

3.  Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. §1391, (b) and (c) because the Defendant Board of Elections is the headquarters of the Board of Elections in the City of New York, a substantial part of plaintiff's claims have emerged from the district, and the defendant city agency has sufficient contacts to be subject to personal jurisdiction in the district

### IV.  PARTIES

4.  The plaintiff is Victor Jordan who is an economist and an adjunct assistant professor and a candidate for the party nomination for State Committeeman/District Leader and Member, New York State Assembly, District 42, for the Primary Election held on September 13, 2018.

5.  Defendant New York City Board of Elections ("BOARD OF ELECTIONS') is the entity duly authorized under and acting under color of state law to promote fair, honest and efficient administered elections and has the sole authority to hire coordinators, election inspectors, and poll clerks to work at Poll Sites in Assembly Districts in New York City for the Primary Election on September 13, 2018.  See N.Y. Election Law §§ 3-404(4), 3-102(11).

6.  Defendants JOSE MIGUEL ARAUJO, JOHN FLATEAU, MARIA R. GUASTELLA, MICHAEL MICHEL, ALAN SCHULKIN, SIMON SCHAMOUN, ROBERT SIANO, and FREDERIC M. UMANE are the duly designated commissioners of Defendant BOARD OF ELECTIONS.  Each of them is sued in his or her official capacity solely in connection with actions taken under color of state law.

7.  Defendant Salvatore BARRERA is the Chief Clerk of Board of Elections in the City of New York, Kings County and is charged with implementing the rules and regulations governing the operations of Defendant BOARD OF ELECTIONS.  See N.Y. Election Law §§ 3-404(4), 3-102(11).

8.  Defendant Josue PIERRE is a candidate for the party nomination for State Committeeman/District Leader, District 42, for the Primary Election held on September 13, 2018. Defendant PIERRE is also the co-founder of the Shirley Chisholm Democratic Club.

9.  Defendant Rodneyse BICHOTTE a candidate for the party nomination for Member, New York State Assembly, District 42, for the Primary Election held on September 13, 2018. Defendant BICHOTTE is also the co-founder of the Shirley Chisholm Democratic Club.

10.  Defendant Chidi Eze is a candidate for the party nomination for State Committeeman/District Leader, District 42, for the Primary Election held on September 13, 2018. Mr. Eze also campaigned in collaboration with Defendant PIERRE and Defendant BICHOTTE in the Primary Election held on September 13, 2018.

11. Defendant Gary TILZER is a political consultant who prepared election petitions for the people on a 'slate of candidates' prepared by him, these candidates, included the Plaintiff. Defendant prepared a separate petition for Defendant Chidi EZE. Attorney Aaron Maslow was secured by Defendant Gary Tilzer to represent the 'slate of candidates' in this petitioning process. Attorney Aaron Maslow is also the same attorney secured by Defendant Josue PIERRE and Defendant Rodneyse BICHOTTE to represent their 'slate of candidates' in the petitioning stage leading to the Primary Election on September 13, 2018. When the Plaintiff became aware that Attorney Aaron Maslow was representing the slate of candidates of which Plaintiff was a part, realizing that Attorney Aaron Maslow was also Defendant Josue PIERRE and Defendant Rodneyse BICHOTTE attorney, Plaintiff stopped coordinating and taking directions from Defendant Gary Tilzer.

12. Defendant Kings County Democratic County Committee ("KCDCC") is a County Committee created and existing pursuant to N.Y. Election Law §2-104. It has its principal office at 16 Court Street, Brooklyn, New York 11241. KCDCC acts under color of state law when it acts in connection with elections in the City of New York. It is through KCDCC that Defendant Josue PIERRE and Defendant Rodneyse BICHOTTE obtains the authority under N.Y. Election Law § 3-226(3) to recommend Poll Workers to Defendant BOARD OF ELECTIONS for employment in the 42nd A.D. on Election Day.

13. Defendant Executive Committee of the KCDCC ("EXECUTIVE COMMITTEE") is a standing committee of Defendant KCDCC that exercises all the rights, privileges, powers and duties not vested exclusively in Defendant KCDCC whenever Defendant KCDCC is not in actual session. See Rules for the Gov't of KCDCC, art. V, §§ 1, 7. Defendant EXECUTIVE COMMITTEE acts under color of state law when it acts in connection with elections in the City of New York.

14. Defendant Clarence Robertson was a Candidate on Defendant BICHOTTE'S slate of candidates in 2016, yet he worked for the NYC BOARD OF ELECTIONS as an Election Inspector in the same Assembly District in which he was running as a candidate in violation of New York Election Law.

15. Defendant MABLE Robertson is the wife of Clarence Robertson who was a Candidate on Defendant BICHOTTE'S slate of candidates in 2016, yet she worked for the NYC BOARD OF ELECTIONS as an Election Inspector in the same Assembly District in which her husband Defendant Clarence Robertson was a candidate in violation of New York Election Law.

16. Defendant Emmanuel Vambran was a Candidate on Defendant BICHOTTE'S slate of candidates in 2016, yet he worked for the Defendant BOARD OF ELECTIONS as a Poll Site Coordinator for the Defendant BOARD OF ELECTIONS in the same Assembly District in which he was running as a candidate in violation of New York Election Law. Defendant Emmanuel Vambran worked for Defendant Board of Elections as a Poll Site coordinator, in the Primary Election on September 13, 2018.

17. Defendant LISA L. DERRICK is the Chief of Staff to Defendant BICHOTTE and she worked for Defendant BOARD OF ELECTIONS as a Poll Site Coordinator in the same Assembly District in which Defendant BICHOTTE was running for reelection. Defendant LISA

3

L. DERRICK worked for Defendant BOARD OF ELECTIONS as a Poll Site coordinator, in the Primary Election on September 13, 2016 and she worked as a Poll Site Coordinator at the exact same Assembly District in the Primary Election on September 13, 2018.

18. Defendant Shirley Chisholm DEMOCRATIC CLUB ("DEMOCRATIC CLUB ") is a political club founded by Josue PIERRE and Rodneyse BICHOTTE. Upon information and belief, the political club Defendant Shirley Chisholm DEMOCRATIC CLUB has been in existence for over 6 years.

## V. FACTUAL ALLEGATIONS

### A. ACTION OF DEFENDANTS COMMON TO ALL COUNTS

19. From or about January 2015, the exact date being unknown to plaintiff, to the present, in the City of New York and elsewhere, Defendants while acting under color of law, engaged in a pattern and practice to conspire, cooperate, scheme, and engage in racketeering activity, violate and willfully subject the plaintiff to a deprivation of civil rights. Additionally, the Defendants aid and abetted each other and by other persons known and unknown, devised and intended to devise material schemes and artifice to defraud the Plaintiff and the voters in the 42nd Assembly District and to deprive the plaintiff and the voters in the 42nd Assembly District of their right to the honest services of Defendant Salvatore BARRERA and Defendant BOARD OF ELECTIONS. New York State election Law § 3-102(11) places a duty on Defendant Salvatore BARRERA and Defendant BOARD OF ELECTIONS to promote fair, honest and efficient administered elections, perform free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment, conflict of interest, and within their fiduciary duty.

20. Upon information and belief, in furtherance of the scheme and artifice to defraud the plaintiff and the voters in the 42nd Assembly District, defendant Salvatore BARRERA, Chief Clerk, Defendant BOARD OF ELECTIONS, received certain compensation, benefits and patronage from Defendant PIERRE and Defendant BICHOTTE in exchange for using his official position to support the reelection of Defendant PIERRE and Defendant BICHOTTE.

21. New York gives political parties a special role in elections. Candidates nominated by political parties, defined as political organizations receiving 50,000 votes at the last gubernatorial election, are guaranteed a position on the general election ballot. See N.Y. Election law §§ 1-104(3), 7-116.

22. In general, party nomination must be made through a primary election, although state and county committees are authorized to nominate candidates for the general election in some circumstances. See N.Y. Election Law §§ 6-110, 6-160(1) and § 6-104(2)(party state committee can designate party candidates for statewide offices, which could be subject to a primary); § 6-116 (party nomination to fill vacancies in offices becoming available after the close of petitioning are made by party committees). Primary elections are held by the state, which has promulgated numerous laws governing access to primary ballots and he conduct of primary elections. See N.Y. Election law §§ 6-118 to 6-136, 7-114, 7-116.

23. In addition, the two political parties who polled the highest and the next highest number of votes for the office of governor, which means the Democratic Party and Republican

Party, recommend candidates for membership on the New York State Board of Elections and Defendant BOARD OF ELECTIONS for consideration to the Governor and City Council. See N.Y. Election law §§ 3-200, 3-204.

## New York Election Law Provisions Governing the Hiring and Placement of Election Day Workers

24. N.Y. Election Law § 3-226(3) provides for the chairperson of the County Committees of the two major political parties to give a list of individuals recommended for employment by Defendant BOARD OF ELECTIONS as Election Inspectors, Poll Clerks and other election day workers on Election Day. State Committeeman and State Committeewomen serves on the relevant Party County Committee. If the County Committee fails to provide such a list, then Defendant BOARD OF ELECTIONS would be free to employ other qualified individuals to work at the Poll Sites on Election Day. See N.Y. Election Law § 3-404.

## The Challenge to N.Y. Election Law Governing the Hiring and Placement of Election Day Workers

25. N.Y. Election Law § 3-226(3) permits Defendant PIERRE, the State Committeeman and Defendant BICHOTTE, the State Committeewoman, to recommend persons to be employed by Defendant BOARD OF ELECTIONS as coordinators, inspectors of elections and Poll Workers on Election Day. Defendant BOARD OF ELECTIONS gave defendant PIERRE and Defendant BICHOTTE first preference in placing Election Day employees in the same Assembly District where Defendant PIERRE and Defendant BICHOTTE and running for reelection. See N.Y. Election Law § 3-404.

26. Although N.Y. Election Law § 3-226(3) permits the Defendant PIERRE, State Committeeman, and Defendant BICHOTTE, State Committeeman, to recommend persons for Defendant BOARD OF ELECTIONS to employ on Election Day, Election Law § 3-404(4) give Defendant BOARD OF ELECTIONS the sole authority to hire coordinators, election inspectors, poll clerks, etc.

27. In the Primary Election on September 13, 2016, Defendant LISA L. DERRICK, the Chief of Staff to Defendant BICHOTTE was employed as an Election Day coordinator at Poll Site PS 269, 1957 Nostrand Avenue, Brooklyn, NY. At P.S. 269, where Defendant LISA L. DERRICK worked as coordinator, in the race for State Committeeman, Plaintiff lost to Defendant PIERRE by a difference of 63 votes. Defendant LISA L. DERRICK acceptance of the position of a Poll Site coordinator, given that she serves as the Chief of Staff for Defendant BICHOTTE, when she knows that Defendant BICHOTTE is a candidate in the same Assembly District as Poll Site P.S. 269 is a violation of New York Election Law §§ 17-130(1), 17-168.

28. On September 21, 2016, Plaintiff visited the Defendant BOARD OF ELECTIONS office in Kings County and Requested copies of the Site Coverage Report By LD/AD for the 18 Polling Sites in the 42nd Assembly District, which contains the names of all the employees at the 18 Polling Sites in the 42nd A.D. This information was provided to Plaintiff immediately upon Plaintiff's request, as is the custom and practice.

29. Pursuant to the NOTICE TO ALL CANDIDATES indicating that the canvassing of valid Absentee Ballots would commence on Friday, September 21, 2016, at 10:00 A.M., Plaintiff and two of his representatives arrived at Defendant BOARD OF ELECTIONS at 10:00 A.M. to observe the canvass of votes cast. Upon our arrival, Defendant Salvatore BARRERA informed us that the canvass would begin after 12 noon and that he would notify Plaintiff of the starting time by phone.

30. When Plaintiff did not hear from Defendant Salvatore BARRERA by 12 noon, on Friday, September 21, 2016, Plaintiff returned to Defendant BOARD OF ELECTIONS to observe the canvass of valid Absentee Ballots. Defendant Salvatore BARRERA directed Plaintiff to wait in the hallway and that he would notify the Plaintiff when the canvass was going to start. However, instead of telling the Plaintiff when the canvass started, Defendant Salvatore BARRERA fraudulently informed the Plaintiff when the canvass ended. Thus, Defendant Salvatore BARRERA conducted the canvass and committed a fraud against the Plaintiff by denying the Plaintiff the right to observe the canvass of Absentee Ballots.

31. New York State Election Law § 3-400(6) prohibits the employment of any candidate, his spouse, his parents, or his child in a Polling Site in the Assembly District in which the individual is a candidate. Nevertheless, on September 13, 2016, in Polling Sites PS 152/PS 315 where the Plaintiff lost by the largest margin, Defendant CLARENCE ROBERTSON who was a candidate on Defendant PIERRE and Defendant BICHOTTE'S slate of Candidates was employed by Defendant BOARD OF ELECTIONS as an 'R Inspector – Relief' and his wife Defendant MABLE ROBERTSON was employed as a 'R Inspector BMD Privacy.' At Polling Site PS 152/PS 315 Plaintiff lost the Primary Election by the largest margin. Then, two years later, September 13, 2018, at the same Polling Site, Defendant CLARENCE ROBERTSON and his wife Defendant MABLE ROBERTSON was again employed in the same positions that they held in 2016. Once again, Plaintiff lost this Polling Site to Defendant PIERRE by the largest margin of any Poll Site. Defendant CLARENCE ROBERTSON conduct of working as an Election Inspector in an Assembly District in which he is also a candidate is violation of New York Election Law §§ 17-130(1), 17-168.

32. For the Primary Election on September 13, 2016, a perusal of the Site Coverage Report By LD/AD for the 18 Polling Sites in the 42nd Assembly District and the list of employees at each Site revealed that the employment of a large number of Poll Worker were in violation of Election Law § 3-400(6). Defendant EMMANUEL VAMBRAN who was a Candidate on Defendant PIERRE and Defendant BICHOTTE'S slate of Candidates was hired as a coordinator at the Polling Site at PS 249, 18 Marlborough Road, Brooklyn, NY. In addition, LAWRENCE B. MORRIS was hired as an 'R-Inspector – Scanner' at the Polling Site at Ditmas Park Rehab Center, 2107 Ditmas Avenue, Brooklyn, NY. Defendant EMMANUEL VAMBRAN conduct of working as an Election Inspector in an Assembly District in which he is a candidate is a violation of New York Election Law §§ 17-130(1), 17-168.

33. Two year later, in the Primary Election on September 13, 2018, Defendant LISA L. DERRICK, the Chief of Staff to Defendant BICHOTTE was again employed as an Election Day coordinator at the Poll Site PS 269, 1957 Nostrand Avenue, Brooklyn, NY. Plaintiff and one of his Poll Watchers entered the Polling Site to observe the closing of the Polling Site. After waiting about 15 minutes for the tape from Scanner B to be placed on the wall, Plaintiff and the Pol Watcher walked over to Scanner B to see what was the cause of the delay. At Scanner B, the

Plaintiff and the Poll Watcher observed two Poll Workers, Defendant Demetria JULIEN and Defendant Michael DAVIDSON fraudulently feeding ballots into the scanner. Defendant Demetria JULIEN was unable to provide a satisfactory reason why voters were not allowed to place their own ballots into the scanner.

34. New York Election Law §§ 7-106(8), 8-312(5) directs that the voter place his own ballot in the scanner upon completion. Election Law § 7-120(1) provides for the use of another scanner if a scanner become inoperable. There was no lawful justification for the two Poll Workers under the supervision of coordinator, Defendant LISA L. DERRICK and Defendant Salvatore BARRERA, to stuff ballots into the scanner during the Primary Election on September 13, 2018. The fraudulent conduct of Defendant Demetria JULIEN and Defendant Michael DAVIDSON with respect to the stuffing of the ballot box constitutes violation of New York State Election Law §§ 17-102, 17-106, 17-108(3), 17-120(4), 17-128, 17-130(13), 17-132(3), and 17-136. (**See APPENDIX A** for Witness Affidavit)

35. Defendant Chidi EZE collaborated with Defendant PIERRE and Defendant BICHOTTE, Defendant Salvatore BARRERA, and Defendant BOARD OF ELECTIONS to prevent the election of the Plaintiff as State Committeeman. In his conversation with the Plaintiff, Defendant Chidi EZE advised the Plaintiff against running for the Position of State Committeeman. In addition, for the election, Defendant Chidi EZE was represented by Aaron Maslow, which is the same attorney that represented Defendant PIERRE and Defendant BICHOTTE in the Primary Election of September 13, 2018. It should be recalled that Defendant CHIDI EZE was also a candidate for the State Committeeman in the same Assembly District. Defendant Chidi EZE part of the overall conspiracy to 'stuff the ballot box.' Defendant Chidi EZE actions and conduct not only violate Plaintiff's civil rights, but Defendant Chidi EZE'S conduct also violated New York Election Law § 17-152.

36. On or about April 16, 2018, Defendant Gary TILZER advised the Plaintiff against running for the position of State Committeeman in the 42nd Assembly District. Defendant Gary TILZER advised the Plaintiff to run solely for the position of Member, NYS Assembly in the 42nd Assembly District. Plaintiff indicated to Defendant Gary TILZER that Plaintiff had already made plans to run for the position of State Committeeman in the 42nd Assembly District.

37. The Plaintiff had retained Defendant Gary TILZER to prepare Plaintiff's petitions as part of the slate of candidates. Defendant Gary TILZER prepared Plaintiff's petitions and fraudulently left out the party designation on Plaintiff's petitions. Defendant Gary TILZER collaborated with Defendant PIERRE and Defendant BICHOTTE, Defendant Salvatore BARRERA, and Defendant BOARD OF ELECTIONS to prevent the election of the Plaintiff as State Committeeman. In addition, in the preparation for the election petitions, Defendant Gary TILZER secured the services of Aaron Maslow, which is the same attorney that represented Defendant PIERRE, Defendant BICHOTTE, and Defendant CHIDI EZE in the Primary Election of September 13, 2018.

38. In addition, on or about June 4, 2018, Defendant Gary TILZER solicited the help of the Plaintiff to assist in the collection of signatures to secure the placement of two judicial candidates on the ballot for the Primary Election on September 13, 2018. However, upon completion of the Plaintiff performance of obtaining the required number of signatures for the judicial candidates that Defendant Gary TILZER represented, Defendant Gary TILZER

fraudulently refused to make payment. This was done by Defendant Gary TILZER as part of a conspiracy involving Defendant PIERRE, Defendant BICHOTTE, Defendant CHIDI EZE, Defendant Salvatore BARRERA, and Defendant BOARD OF ELECTIONS, and others to prevent the Plaintiff from being duly elected as State Committeeman for the 42nd Assembly District.

39.     Upon Information and belief, Defendant Shirley Chisholm DEMOCRATIC CLUB was co-founded by PIERRE and Defendant BICHOTTE, which was the major recruiting ground to recruit individuals to implement Defendant PIERRE, Defendant BICHOTTE, Defendant Salvatore BARRERA, Defendant Chidi EZE, and Defendant BOARD OF ELECTIONS conspiracy to violate Plaintiff's civil rights.

40.     Upon information and belief, upon an examination of the Site Coverage Report By LD/AD for the 18 Polling Sites in the 42nd Assembly District, for the Primary Election on September 13, 2016, which includes the names of all the employees at these Polling Sites, most of the employees at these 18 Polling Sites were members of Defendant PIERRE and Defendant BICHOTTE'S Political Club, the Shirley Chisholm DEMOCRATIC CLUB, or members of Defendant PIERRE and Defendant BICHOTTE'S family, close friends, and supporters.

41.     On September 21, 2016, after receiving copies of the 'Site Coverage Report By LD/AD' for the 18 Polling Sites in the 42nd Assembly District listing the individuals employed in all the Polling Sites and observing the employment of Candidates Defendant EMMANUEL VAMBRAN, LAWRENCE B. MORRIS, Defendant CLARENCE ROBERTSON, and Defendant CLARENCE ROBERTSON'S spouse Defendant MABLE ROBERTSON in violation of Election Law § 3-400(6), the Plaintiff wrote a letter of complaint to Defendant Salvatore BARRERA on September 21, 2016 and September 22, 2016. In the letter of complaint to Defendant Salvatore BARRERA, Plaintiff also complained about the employment of Defendant LISA L. DERRICK, the Chief of Staff of Defendant BICHOTTE at the Polling Site at PS 269, at 1957 Nostrand Avenue, Brooklyn, NY. On or about September 24, 2016, Defendant Salvatore BARRERA called and left a message on Plaintiff's voice mail stating that Plaintiff's complaint will be investigated and the results will be reported back to the Plaintiff. As of the date of this federal complaint, Defendant Salvatore BARRERA has not reported the results of Plaintiff's complaint.

42.     On or about September 28, 2016, Plaintiff filed an Order to Show Cause with Petition challenging the results of the Primary Election on September 13, 2016, in the New York State Supreme Court, Kings County. (Index No. 700096/16). Ultimately, the Petition was dismissed for improper service.

43.     Upon information and belief, because of the letter of complaint that Plaintiff sent to Defendant BOARD OF ELECTIONS on September 21, 2016, September 22, 2016, against Defendant PIERRE and Defendant BICHOTTE and the Order to Show Cause with Petition that Plaintiff filed against Defendant PIERRE, Defendant BICHOTTE, and Defendant BOARD OF ELECTIONS on September 28, 2016, Defendant BOARD OF ELECTIONS, retaliated against Plaintiff by requiring that Plaintiff obtain all request for documents from Defendant BOARD OF ELECTIONS by making a formal request under the Freedom of Information Law (FOIL), which was never the case before. This retaliatory conduct by Defendant BOARD OF ELECTIONS

violates Plaintiff's right to petition his government under the Petition Clause of the First Amendment to the United States Constitution.

44. On or about each date below, in the Southern District of New York and elsewhere, the Defendants aided and abetted by each other, for the purpose of executing the above-described material scheme and artifice to defraud and deprive the Plaintiff and the voters of the 42nd Assembly District of New York the right to a fair and honest election from Defendant BOARD OF ELECTIONS and Defendant Salvatore BARRERA. The Defendants transmitted and caused to be transmitted by means to wire communication in interstate commerce, the following writings signals and sounds, in violation of Title 18, United States Code §§ 2, 1341, and 1346:

| Date | Wire Transmission |
|---|---|
| June 24, 2016 | Defendant Salvatore BARRERA leaves message on Plaintiff voicemail stating that he will investigate the complaint. |
| June 14, 2017 | John Sfera on behalf of Defendant BOARD OF ELECTIONS first response to Plaintiff's FOIL request. |
| June 19, 2017 | John Sfera on behalf of Defendant BOARD OF ELECTIONS second response to Plaintiff's FOIL request. |
| July 5, 2017 | Joshua D. Williams on behalf of Defendant BOARD OF ELECTIONS third response to Plaintiff's FOIL request. |
| December 7, 2017 | John Sfera on behalf of Defendant BOARD OF ELECTIONS fourth response to Plaintiff's FOIL request. |

### B. THE CASE OF VICTOR JORDAN

45. The Plaintiff, Victor Jordan, satisfied all the requirements to have his name placed on the ballot to seek election to the position of State Committeeman and Member of the New York State Assembly for the 42nd District in the Primary Elections on September 13, 2016 and September 13, 2018.

46. The Defendants conspired to deny the Plaintiff Victor Jordan fair and honest elections, which deprived the Plaintiff of his First and Fourteenth Amendments rights under the United States Constitution.

47. Defendant PIERRE and Defendant BICHOTTE used their position as State Committeeman and State Committeewoman, respectively, to place members of their political club, Defendant the Shirley Chisholm DEMOCRATIC CLUB, and their friends and supporters to operate Poll Sites in the Assembly District in which Defendant PIERRE, Defendant BICHOTTE are candidates for reelection in violation of New York Election Law. Defendant PIERRE, Defendant BICHOTTE was only able to subvert New York Election Law with the support and assistance from Defendant BOARD OF ELECTIONS and Defendant Salvatore BARRERA.

48. In a Polling Site where Defendant BICHOTTE Chief of Staff, Defendant LISA L. DERRICK, was the coordinator, workers under her supervision were caught fraudulently stuffing the scanner with ballots that did not belong to voters, which resulted in the violation of Plaintiff's civil rights.

9

49. As a result of Defendants actions and decisions, Plaintiff was wrongfully not certified as the winner in the race for State Committeeman and the New York State Assembly and the loss of the resources that Plaintiff expended in the two primary elections.

### C.  USE OF THE MAIL AND WIRES

50. At all times relevant hereto, Defendants used numerous mail and interstate wire communication to create, execute and manage their fraudulent scheme as described above.

51 Defendants used the mail and wires to retaliate against the Plaintiff for his assertion of his First Amendment rights as described above, communication with Plaintiff and communication through the relevant time period, via email, telephone, sent through the U.S. mails and over the internet, including communication concerning the fraudulent scheme to deprive plaintiff and the voters in the 42nd Assembly District of their basic civil rights.

### D.  CONSPIRACY AND CONCERT OF ACTION

52. Defendants entered, into and through, various overt acts described above an agreement between themselves to illegally deprive Plaintiff of his fundamental rights for Defendants' own personal enrichment and political patronage from Defendant PIERRE and Defendant BICHOTTE. Defendants implemented said agreement and conspiracy, in concert of action, and each aiding and abetting the other, such that Defendants are jointly and severally liable for the resulting damages to Plaintiff.

### VI.  CAUSES OF ACTION

### COUNT I – FOR VIOLATION OF RICO, 18 U.S.C. §1961, et. Seq.

53. Plaintiff incorporate by reference herein all proceeding paragraphs as if fully set forth herein.

54. Defendants are "persons" within the meaning of 18 U.S.C. §1961(3) who conducted affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

55. There is an association-in-fact of all Defendants for the purpose of stealing the election from the Plaintiff, thereby defrauding the Plaintiff and the voters in the 42nd Assembly District to further the Defendants' own enrichment and to obtain political patronage from Defendant PIERRE and Defendant BICHOTTE as an enterprise within the definition of RICO (the "Association-in-Fact Enterprise"). The Association-in-Fact Enterprise was created, controlled and conducted by all Defendants for the purpose hereinbefore. All Defendants are Defendants for purpose of the Association-in-Fact Enterprise.

56. All Defendants have exerted ongoing and continuous control over the Association-in-Fact Enterprise, and they have participated in the operation or management of the affairs of the Association-in-Fact Enterprise as described in great detail above.

57. Defendants have conducted the affairs of the Association-in-Fact Enterprise, through a pattern of racketeering activity that includes predicate acts indictable under 18 U.S.C. §1341 (mail fraud), 1243(wire fraud) and six felonies subject to prosecution under NY Election Law (Election Law §§ 17-106, 17-108(3), 17-120, 17-128, 17-132(3), and 17-136), through the following actions, among others, as is set forth above:
   a. Recruitment of Poll Workers who agree to willfully enter into an agreement to violate the Election Law.
   b. Using the political club to recruit units of worker to place in every Polling Site in the Assembly District to implement the scheme.
   c. Using the position of State Committeeman and State Committeewoman to recommend Election Day Poll Workers to the Board of Elections.
   d. obtain the support of the Chief Clerk at the Board of Elections to place these Poll Workers in the same Assembly District where the Defendants are running for reelection.
   e. Having the recommended persons who are now Poll Workers prepare false ballots for feeding into the scanners throughout the Assembly District.
   f. Taking official action to implement the scheme to defraud the Plaintiff and the voters in the Assembly District.

58. Each of the Defendants' fraudulent mailings, Election Law violations, and interstate wire transmissions constitutes "racketeering activity" within the meaning of 18 U.S.C. §1961(1). Collectively these violations are "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

59. Defendants engaged in a pattern of racketeering activity intending to defraud the Plaintiff and deny the voters in the 42nd Assembly District a fair and honest election.

60. Defendants criminal acts of racketeering had the same pattern and similar purposes. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and method of commission, and had similar results affecting similar victims including Plaintiff and the voters in the 42nd Assembly District. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to property of Plaintiff and voters in the 42nd Assembly District.

61. Defendants were an association of individuals, partnerships, and corporations joined in purpose of conspiring to commit honest election fraud. The association employed a number of schemes in an attempt to conceal the fact that they were stealing the election and that the certification of Defendant PIERRE and Defendant BICHOTTE as the winner over the past four years was not the choice of the voters in the Assembly District, but the result of their fraud on the Plaintiff and the voters in the Assembly District.

62. Defendants were organized in a consensual decision-making manner in which to hide and distribute the income, other benefits, and patronage among the conspirators.

63. Defendants engaged in said association and actions during the entire relevant time period in violation of 18 U.S.C. §1961.

64. As a result of Defendants' violation of RICO, Plaintiff has lost his expenditure of

11

money made in campaigning for the offices, including the loss of the wages that Plaintiff would earn as a Member of the New York State Assembly, and other benefits associated with holding elective and public office.

65. Plaintiffs' injuries to business and property were directly and proximately caused by Defendants' racketeering activity as described above.

66. By virtue of these violations of 18 U.S.C. §1962(c) Defendants are jointly and severally liable to Plaintiff for three times the damages sustained, plus the costs of this suit including reasonable attorney's fees.

WHEREFORE, Plaintiff, Victor Jordan, demand judgment against Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, costs of suit, attorney's fees, and such other relief as this Honorable Court may deem appropriate.

### COUNT II – FOR CONSPIRACY TO VIOLATE RICO

67. Plaintiff incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth herein.

68. Defendants conspired with one another to commit the violations of 18 U.S.C. §1962 alleged herein.

WHEREFORE, the Plaintiff, Victor Jordan, demand judgment against Defendants, individually, jointly, and/or jointly and severally for compensatory and treble damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with interest, cost of suit, attorney's fees, and such other relief as this Honorable Court may deem appropriate.

### COUNT III – DEPRIVATION OF RIGHTS PURSUANT TO THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983 AGAINST ALL DEFENDANTS ON BEHALF OF VICTOR JORDAN

69. Plaintiff incorporates by reference all preceding and succeeding paragraphs as if fully set forth.

70. At all times relevant hereto, all above named Defendants were "persons" within the meaning of 42 U.S.C. §1983.

71. At all times relevant hereto, all above named Defendants were acting "under color of state law" pursuant to 42 U.S.C. §1983.

72. All the named Defendants, while acting under the color of state law, unlawfully, and/or intentionally, unreasonably, willfully maliciously and/or with deliberate and/or reckless indifference to the Plaintiff's rights violated 42 U.S.C. §1983 and deprived Plaintiff of his rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution, similar provisions of the New York State Constitution, Federal Law, State Law, and/or local law

in that these Defendants without lawful basis caused the aforementioned injuries and damages to the Plaintiff, in violation of their aforesaid guaranteed rights as follows:

    a.    Defendants retaliated against Plaintiff for the letter of complaint that the Plaintiff wrote on September 21, 2016, September 22, 2018, and the Order to Show Cause filed on September 28, 2018, by requiring that the Plaintiff go through formal channels to obtain copies of documents, which were previously given to the Plaintiff the same day, which is a violation of the Petition Clause of the First Amendment to the U.S. Constitution.

    b.    When Defendant BOARD OF ELECTIONS and Defendant Salvatore BARRERA favored candidates Defendant PIERRE and Defendant BICHOTTE, the Defendants violated Plaintiff's Equal Protection Right under the Fourteenth Amendment to the U.S. constitution.

    c.    When the defendants stuffed the scanner machine with false ballots during the Primary Election on September 13, 2018 to favor Defendant PIERRE and Defendant BICHOTTE over the plaintiff this demonstrated patent, fundamental unfairness, which violated Plaintiff right under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

    d.    Defendant conspired to 'steal the election' from the Plaintiff and give Plaintiff's victory to the candidates Defendant PIERRE and Defendant BICHOTTE. This theft of the Plaintiff's right to vote is a violation of Plaintiff rights under the First and Fourteenth Amendment to the U.S. Constitution.

    73.    Defendants' aforesaid conduct initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C §1983 and deprived Plaintiff of his rights as guaranteed under the First and Fourteenth Amendment to the United States Constitution, similar provisions of the New York Constitution, Federal Law, State Law, and/or local law without lawful basis, thus causing the injuries and damages to Plaintiff.

    74.    By reason of the aforesaid actions and inactions of Defendants, Plaintiff suffered substantial injuries, damages and special damages.

WHEREFORE, Plaintiff, Victor Jordan:

    [a]    To enter a judgment declaring and determining that N.Y. Election Law §§ 3-226(3), 3-404 is in violation of the United State Constitution, both facially and as applied to Plaintiff

    [b]    To grant a preliminary and permanent injunctive relief enjoining Defendants from enforcing N.Y. Election Law §§ 3-226(3), 3-404, including but not limited to enjoining Defendant BOARD OF ELECTIONS from enforcing N.Y. Election Law §§ 3-226(3), 3-404.

    [c]    Demands judgment against the defendants, individually, jointly and/or jointly and

severally for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) together with interest, cost of suit, attorneys' fees.

[d]  An injunction, that, pending the hearing and determination of this Court the Defendant BOARD OF ELECTIONS are enjoined and restrained from certifying any candidate as being a candidate duly elected to the subject public office or party position in the New York State 42nd Assembly District at the September 13, 2018 Primary Election.

[e]  Award such other and further relief as the Court deems to be in the interest of justice.

DATE:  Brooklyn, New York
October 19, 2018

Respectfully submitted,

VICTOR JORDAN
PO Box 100042
Vanderveer Station
Brooklyn, New York 11210
(718) 679-1940

TO:  NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

Jose Miguel Araujo, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

John Flateau, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

Maria R. Guastella, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

14

Michael Michel, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

Alan Schulkin, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

Simon Shamoun, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

Robert Siano, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

Frederic M. Umane, Commissioner
NYC Board of Elections
32 Broadway, 7th Floor
New York 10004

Salvatore Barrera, Chief Clerk
NYC Board of Elections
345 Adams Street
Brooklyn, NY 11201

Kings County Democratic County Committee
16 Court Street, #1016
Brooklyn, NY 11241

Executive Committee
Kings County Democratic County Committee
16 Court Street, #1016
Brooklyn, NY 11241

Josue Pierre
76 East 31 Street
Brooklyn, NY 11226

Rodneyse Bichotte
645 East 26 Street, #1L
Brooklyn, NY 11210

# Appendix "A"

## AFFIDAVIT

I, Royston Antoine, being duly sworn, hereby declare as follows:

1. On the night of the election I entered the polling station at PS 269, 1957 Nostrand Avenue, Brooklyn, NY, as a Poll Watcher for the Candidate Victor Jordan. The Candidate accompanied me.

2. Shortly after we arrived, the election day workers had placed all the scanner tapes on the wall EXCEPT the tape for Scanner B. After siting for about 15 minutes, the candidate and I walked over to scanner B to see what was causing the delay. As we got to the scanner B, we noticed that two of the workers were feeding Scanner B with a pile of ballots. It was unclear how many of these ballots were fed into Scanner B, but at the end of the process there were nine ballots remaining, which was said to be unreadable.

3. At some point, the candidate, Victor Jordan, asked why these ballots were not fed into other scanners that were in operation. It should be noted that this particular site had seven scanners. The answer give was that at some point or another many of these scanners were not working.

_____
Signature

Sworn to before me 15 day of September 2018

_____
Notary Public

MARIO ROSEMOND
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01RO6023655
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES APRIL 26, 2019

9-15-2018