UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VICTOR JORDAN,

                Plaintiff,

- against -

JOSUE PIERRE ET AL.,

                Defendant.

18-cv-8528 (JGK)

MEMORANDUM OPINION
AND ORDER

---

JOHN G. KOELTL, District Judge:

The pro se plaintiff, Victor Jordan, brought this action against the Board Of Elections in the City of New York ("BOE"); Commissioners of the BOE: Salvatore Barrera, Josue Pierre, Rodneyse Bichotte, Chidi Eze, and Gary Tilzer; the Kings County Democratic County Committee ("KCDCC"); the Executive Committee of the KCDCC; Demetria Julien and Michael Davidson; the Shirley Chisholm Democratic Club ("SCDC"); Clarence Robertson, Mable Robertson, Emmanuel Vambran, and Lisa L. Derrick. The plaintiff alleges violations of the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968, a conspiracy to violate RICO, and a deprivation of civil rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.

The BOE moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and the defendants Bichotte, the KCDCC, and the Executive Committee of the KCDCC (the "Party Defendants") move for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons explained below, the motions are **granted** and the complaint is **dismissed** without prejudice.

I

The following facts are drawn from the amended complaint ("AC") and are accepted as true for the purposes of this motion.

Jordan was a candidate for the party nomination for the State Committeeman/District Leader and for a Member of the New York State Assembly for District 42 in the primary election held on September 13, 2018. AC ¶ 4. Barrera is Chief Clerk of the BOE. AC ¶ 7. Pierre and Bichotte were also candidates for the positions that Jordan was running for in the 2018 primary. AC ¶¶ 8, 9. Derrick is Bichotte's Chief of Staff. AC ¶ 17.

Jordan alleges that the defendants conspired to deny him a fair and honest election. AC ¶ 46. The crux of Jordan's complaint is that Pierre and Bichotte used their positions as State Committeeman and Committeewoman, with support from the BOE and Barrera, to place people affiliated with them, including members of the SCDC, to operate polling sites in which Pierre and Bichotte were candidates. AC ¶ 47. Jordan alleges that in a polling site where Derrick was the coordinator, poll workers under her supervision were caught fraudulently stuffing the scanner with ballots that did not belong to voters. AC ¶ 48. Jordan provided a sworn affidavit from a poll watcher, Royston

2

Antoine, who witnessed a scanner being fed by poll workers with ballots. AC at 17. When asked for an explanation, the poll workers stated that at some point during the day, many of the scanners were not working. Id. As a result, Jordan alleges he was wrongfully not certified as the winner in the race for the State Committeeman and the New York State Assembly for District 42. AC ¶ 49. Jordan alleges that the defendants committed six violations of New York election law. AC ¶ 57.

On September 28, 2016, Jordan filed a petition in the New York State Supreme Court, Kings County, challenging the results of the 2016 primary election in which he also ran as a candidate. AC ¶ 42. Jordan alleges that, as a result of filing this petition, he had to file a Freedom of Information Act Law (FOIL) request to receive information from the BOE which the BOE had previously provided him without a FOIL request. AC ¶ 43. Between June 24, 2016 and December 7, 2017, Jordan received five communications from Barrera and the BOE (the "Wire Transmissions"). AC ¶ 44. In one communication, Barrera informed Jordan that Barrera would investigate Jordan's 2016 complaint and the other four communications were responses from various representatives of the BOE to Jordan's FOIL request. Id.

On September 17, 2018, Jordan filed another complaint in the New York State Supreme Court, Kings County, challenging the

results of the 2018 primary. Kitzinger Decl., Ex. A, at 8. The complaint was dismissed on default. Id., Ex. B, at 3.

## II

The standards to be applied to a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are the same as those applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).[1]

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

4

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in [the] complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co.

5

Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

### III

The defendants seek a dismissal of the amended complaint in its entirety because the amended complaint allegedly fails to state a claim with respect to all causes of action.

### A

With respect to the RICO claim, the defendants argue that Jordan has failed to plead the requisite predicate acts of mail fraud and wire fraud, the existence of an enterprise, and that the defendants operated or managed the alleged enterprise.

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001). As relevant here, "[t]o establish a violation of 18 U.S.C. § 1962(c) . . . a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Id. at 306.

To establish a pattern of racketeering activity, the plaintiff must (1) plead at least two predicate acts enumerated in § 1961(1)[2] and (2) "must show that the predicate acts are

---

[2] 18 U.S.C. § 1961(1) defines "racketeering activity" as "(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or

6

related and that they amount to, or pose a threat of, continuing criminal activity." GICC Cap. Corp. v. Tech. Fin. Grp., 67 F.3d 463, 465 (2d Cir. 1995). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008). Jordan has not satisfied either requirement.

As RICO predicates, Jordan alleges mail fraud, wire fraud, and violations of six different New York election law provisions, N.Y. Elec. L. §§ 17-106, 17-108, 17-120, 17-128, 17-132, and 17-136.[3] As an initial matter, the alleged state election law violations are not valid RICO predicates because none of them involve crimes enumerated in Section 1961. See Red Ball Interior Demolition Corp. v. Palmadessa, 874 F. Supp. 576, 586 (S.D.N.Y. 1995) ("Those offenses which may serve as

---

listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code[,]" including 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).
[3] These provisions concern the following violations, respectively: "Misconduct of election officers," "False affidavits; mutilation, destruction or loss of registry list or affidavits," "Misconduct in relation to certificate of nomination and official ballot," "Violations of election law by public officer or employee," "Illegal voting," "False returns; unlawful acts respecting returns."

7

predicate acts for a RICO claim are exclusively listed in § 1961."); see also United States v. Reale, No. 96-cr-1069, 1997 WL 580778, at *9 (S.D.N.Y. Sept. 17, 1997) (concluding that the state crimes which do not appear on the exclusive list in § 1961 are not valid RICO predicates).

As to mail fraud and wire fraud, Jordan has not pleaded facts to satisfy the elements of these offenses. These elements are: "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire [and] mail . . . communications in interstate commerce in furtherance of the scheme." Chanayil v. Gulati, 169 F.3d 168, 170-71 (2d Cir. 1999). Further:

> Allegations of mail [and wire] fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b). Pursuant to this higher pleading standard, the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. Plaintiffs asserting mail fraud must also identify the purpose of the [communication] within the defendant's fraudulent scheme.

McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992); see also Williams v. Affinion Grp., LLC, 889 F.3d 116, 124 (2d Cir. 2018) (applying the same particularity requirement to mail and wire fraud). "[I]n cases in which the communications are not

8

themselves misleading, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." Schnell v. Conseco, Inc., 43 F. Supp. 2d 438, 443 (S.D.N.Y. 1999).

The five Wire Transmissions that Jordan relies on in support of his mail and wire fraud allegations were communications related to his 2016 complaint and FOIL request. Jordan does not allege that they were fraudulent, nor does he explain what purpose these communications served within the defendants' alleged scheme to deprive him of the victory in the 2018 primary election. Because of that failure, Jordan has failed to plead the mail and wire fraud predicates to his RICO claim. See Curtis & Assocs., P.C. v. Law Offs. of David M. Bushman, Esq., 758 F. Supp. 2d 153, 177 (E.D.N.Y. 2010) (dismissing RICO claims because the plaintiffs neither "allege which, if any, statements by the defendants . . . were allegedly false or misleading" nor "ma[d]e [any] attempt to identify the purpose of the mailings within the defendants' overall alleged fraudulent scheme"), aff'd, 443 F. App'x 582 (2d Cir. 2011).

Moreover, the RICO claim fails because Jordan has not alleged enough facts to demonstrate the existence of an enterprise. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact

9

although not a legal entity." 18 U.S.C. § 1961(4). It is "an entity [or] a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). However, "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." Id.

In this case, the alleged enterprise is described solely in terms of the alleged scheme against the plaintiff, namely, "an association-in-fact of all [the d]efendants for the purpose of stealing the election from the [p]laintiff." AC ¶ 55. As a result, it is not "an entity separate and apart from the pattern of activity in which it engages." Turkette, 452 U.S. at 583. Therefore, Jordan has failed to plead facts to show that a RICO enterprise existed. See Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 458-59 (S.D.N.Y. 2009) ("The Defendants and co-conspirators did not exist as an association in fact separate and apart from the alleged RICO activity . . . . The non-existence of a separate enterprise is fatal to Plaintiffs' RICO claim.").

Accordingly, the motion to dismiss the RICO claim is **granted**.

B

The defendants argue that the RICO conspiracy claim must be dismissed because the complaint failed to establish a RICO violation.

The conspiracy provision of RICO provides that "[i]t shall be unlawful for any person to conspire to violate any of the [substantive] provisions" of Section 1962. 18 U.S.C. § 1962(d). "To establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 244 (2d Cir. 1999). In Salinas v. United States, the Supreme Court instructed:

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.

522 U.S. 52, 65 (1997). Accordingly, the Second Circuit Court of Appeals has concluded that, compared to a substantive RICO violation, "the requirements for RICO's conspiracy charges under

11

§ 1962(d) are less demanding," Baisch v. Gallina, 346 F.3d 366, 376 (2d Cir. 2003), and that "the establishment of an enterprise is not an element of the RICO conspiracy offense." United States v. Applins, 637 F.3d 59, 75 (2d Cir. 2011).

As a result, it is incorrect to say, as the defendants do, that Jordan's failure to plead a substantive RICO violation necessarily defeats a RICO conspiracy claim. After all, if "a conspiracy may exist and be punished whether or not the substantive crime ensues," Salinas, 522 U.S. at 65, in at least some instances of conspiracy there will be no substantive violation to plead. Instead, it is enough for a plaintiff to allege that the defendant "knew about and agreed to facilitate the scheme." Baisch, 346 F.3d at 377.

Nonetheless, the amended complaint with respect to the conspiracy count fails to clear even this "less demanding" hurdle. Baisch, 346 F.3d at 376. Jordan does not allege any facts to show that there was an agreement among the defendants to engage in RICO violations. In fact, the sole allegation that Jordan makes is that the "[d]efendants conspired with one another." AC ¶ 68. This legal conclusion without any factual support is not entitled to the presumption of truth applied to factual pleadings. See Iqbal, 556 U.S. at 678. As a result, the complaint fails to state a claim of RICO conspiracy. See Browning Ave. Realty Corp. v. Rosenshein, 774 F. Supp. 129, 141

(S.D.N.Y. 1991) (dismissing a conspiracy claim where the plaintiff alleged no facts evidencing the existence of an agreement).

Accordingly, the motion to dismiss the RICO conspiracy claim is **granted**.

C

Jordan's Section 1983 claim contains several distinct claims, but because Jordan has failed to address many of them in his response, all but two of them are deemed abandoned. See City of Perry v. P&G Co., 188 F. Supp. 3d 276, 287 (S.D.N.Y. 2016) (dismissing claims as to which the plaintiff failed to oppose the motion to dismiss). The two surviving claims are (1) a declaratory judgment claim seeking a declaration that two sections of New York's Election Law, N.Y. Elec. L. §§ 3-226(3) and 3-404, are unconstitutional, and (2) a retaliation claim against the BOE for Jordan's assertion of his First Amendment right to petition the court. Both of these claims will be dismissed.

As to the declaratory judgment claim seeking to declare New York's Election Law §§ 3-226(3) and 3-404 unconstitutional, the amended complaint presents no facts or argument as to why such a declaration is warranted, but merely requests it in the prayer for relief. In any event, even in his response, Jordan fails to provide sufficient facts to state a claim. In essence,

13

Jordan's theory is that New York Election Law § 3-226(3)[4] gives the incumbent an unfair advantage, and thus violates his Due Process rights, because it "lays the conditions" for the defendants to have their friends, family, and employees conspire to illegally stuff the polling machines with remarked ballots. Pl.'s Opp'n at 8. However, the speculation that a law "lays the conditions" for an unconstitutional act is far removed from a factual allegation. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."). Nor does Jordan's allegation that he saw poll workers feeding ballots in the evening hours suffice. New York election law provides that "ballots that have not been scanned because a ballot scanner was not available . . . shall be . . . cast . . . on a ballot scanner, if one is available, at the close of the polls." N.Y. Elec. L. § 9-110(1). The affidavit from the poll watcher that Jordan supplied with his amended complaint states that the explanation for the feeding of ballots was that some of the scanners were not working at various points. In other words, the conduct that Jordan observed was entirely consistent with the law and does not, without more, support an inference of conspiracy. See Twombly, 550 U.S. at 554

---

[4] The statute provides that "[l]ists of persons recommended to serve as inspectors of election and poll clerks shall be filed by the chairperson of the county committees of the political parties entitled to representation on the board of elections." N.Y. Elec. L. § 3-226(3).

14

(deeming insufficient allegations of conduct that is "consistent with conspiracy, but just as much in line with a wide swath of" lawful activity).

Turning to the retaliation claim, to state a retaliation claim under the First Amendment, "a plaintiff must show: (1) [the plaintiff] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused [the plaintiff] some injury." Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015). Jordan claims that as a result of bringing his 2016 and 2018 complaints, he was required to file a FOIL request to get access to information that he was previously able to access without filing a FOIL request. The defendants do not dispute that Jordan's right to petition the court is protected by the First Amendment. But his retaliation claim fails because he has failed to allege facts to support the other two elements of a retaliation claim. As an initial matter, the amended complaint provides no detail about the information that Jordan was previously given access to without a FOIL request and the information that he had to file a FOIL request to receive. Accordingly, it is impossible to ascertain whether there was anything improper about the requirement to file a FOIL request and, accordingly, whether any retaliation occurred. Furthermore, the amended complaint pleads

15

no facts connecting Jordan's First Amendment conduct, the BOE, and the alleged retaliation. Therefore, the amended complaint fails to make sufficient factual allegations that the actions taken by the BOE were motivated by Jordan's First Amendment activity. See Jordan v. N.Y.C. Bd. of Elections, 816 F. App'x 599, 602 (2d Cir. 2020) (affirming dismissal of a similar First Amendment retaliation claim where Jordan similarly failed to plead any facts to support the nexus between his conduct and the alleged retaliation).

Accordingly, the motion to dismiss the claims brought pursuant to Section 1983 is **granted**.

### D

The defendants Eze and Tilzer have answered the amended complaint and asserted counterclaims for malicious prosecution and intentional infliction of emotional harm. Having dismissed the federal claims brought by Jordan, and in the absence of any allegation of diversity jurisdiction, the Court must determine whether to exercise supplemental jurisdiction over these state law claims.

Pursuant to 28 U.S.C. § 1367, federal courts can exercise supplemental subject matter jurisdiction over state law claims that derive from the same "common nucleus of operative fact" as the federal claims brought in the same action. Briarpatch Ltd., L.P. v. Phx. Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004);

see also Jones v. Ford Motor Credit Co., 358 F.3d 205, 213 (2d Cir. 2004) (applying Section 1367 to counterclaims). However, when the Court dismisses the federal claims, the Court may decline to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3); Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." Kolari, 455 F.3d at 122 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of [these] factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7.

In this case, the Carnegie-Mellon factors counsel against the exercise of jurisdiction. After dismissing the federal claims, the Court's decisions would be limited to considering state law claims. Such "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Furthermore, the pre-discovery stage of the litigation means that the factors of judicial economy,

convenience, fairness, and comity point toward declining supplemental jurisdiction. See Page v. Oath Inc., No. 17-cv-6990, 2018 WL 1406621, at *4 (S.D.N.Y. Mar. 20, 2018), aff'd sub nom. Page v. United States Agency for Glob. Media, 797 F. App'x 550 (2d Cir. 2019).

Accordingly, the state law counterclaims are **dismissed** without prejudice for lack of subject matter jurisdiction.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

For the foregoing reasons, the motion to dismiss and the motion for a judgment on the pleadings are **granted** and the amended complaint is **dismissed** without prejudice. The plaintiff may file an amended complaint within thirty (30) days of this Memorandum Opinion and Order. If the plaintiff fails to file an amended complaint within that period, the case may be dismissed with prejudice.

The counterclaims are **dismissed** without prejudice for lack of subject matter jurisdiction.

The Clerk of the Court is directed to close docket numbers 84, 85, and 86.

The Clerk is also directed to mail a copy of this Memorandum Opinion and Order to the pro se plaintiff.

**SO ORDERED.**

**Dated:** New York, New York
June 22, 2021

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　John G. Koeltl
　　　　　　　　　　　　　　　**United States District Judge**